**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CONVERSE INC., <br><br>          Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br>          Defendants. | Case No. 21-cv-05701 |

## COMPLAINT

Converse Inc. ("Plaintiff" or "Converse") brings the present trademark infringement and counterfeiting action against the Partnerships and Unincorporated Associations identified on attached Schedule A (collectively, "Defendants") and alleges as follows:

### I. INTRODUCTION

1.     This action has been filed by Converse to combat e-commerce sellers who trade upon Converse's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including footwear, athletic wear, and hats, using counterfeit and infringing versions of Converse's federally registered trademarks (the "Counterfeit Converse Products"). Using one or more of the seller aliases identified in attached Schedule A (the "Seller Aliases"), Defendants create e-commerce stores[1] which are advertising, offering for sale, and selling infringing and Counterfeit Converse Products.  Many of the e-commerce stores operating under the Seller Aliases share unique identifiers, indicating that their counterfeiting operations arise out

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

of the same transaction, occurrence, or series of transactions or occurrences and establishing a logical relationship between them. However, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations. E-commerce platforms used by Defendants – including Amazon, eBay, AliExpress, Alibaba, Wish.com, and DHgate – fail to adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of counterfeit products on their platforms. Thus, Converse is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants' counterfeiting of the registered Converse trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Converse Products on U.S.-facing e-commerce platforms. Converse has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores

that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and have sold products using infringing and counterfeit versions of Converse's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Converse substantial injury in the State of Illinois.

### III.  THE PARTIES

**Plaintiff**

4.      Converse is organized and existing under the laws of the State of Delaware with an office and principal place of business at 1 Lovejoy Wharf, Boston, Massachusetts 02114.

5.      Converse is a wholly-owned subsidiary of Nike, Inc.

6.      Founded in 1908, Converse is a lifestyle brand engaged in the design, distribution, and sale of footwear, apparel, and accessories (collectively, the "Converse Products").  Converse is a leading designer, marketer, and distributor of footwear and apparel, which are marked with the famous Converse trademarks.  For over 100 years, Converse has been making its famous Chuck Taylor All Star and One Star sneakers.

7.      The Chuck Taylor All Star shoe, one of the most popular and storied basketball shoes of all time, was the world's first performance basketball shoe, introduced in 1917. The shoe's namesake, Chuck Taylor, nicknamed "Mr. Basketball", evangelized the sport of basketball for nearly a half-century, bringing the ideals of originality, creativity, and self-expression to the world through his eyes. The original canvas and rubber classic Converse All Star, with the Chuck Taylor name and endorsement added in 1934, is a global icon. More than 750 million pairs of Converse shoes have been sold in 144 countries.

8.    The Converse brand is a multi-million-dollar brand, and Converse spends considerable resources marketing and protecting it. Converse branded products have become enormously popular and even iconic, driven by Converse's arduous quality standards and innovative design. Among the purchasing public, genuine Converse Products are instantly recognizable as such.  In the United States and around the world, the Converse brand has come to symbolize high quality, and Converse Products are among the most recognizable athletic apparel products in the world.

9.    Many Converse trademarks are registered with the United States Patent and Trademark Office, and Converse Products typically include at least one of Converse's registered trademarks.  Converse uses its trademarks in connection with the marketing of Converse Products, including the following marks which are collectively referred to as the "Converse Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 369,971 | ALL STAR | For: Athletic shoes of rubber and fabric in class 25 |
| 868,375 | CONVERSE | For: Clothing-namely, industrial boots, rubber boots, tennis shoes, basketball shoes, boat shoes, general purpose athletic sneakers, casual shoes, jackets, trousers, parkas, shirts, raincoats in class 25 |
| 1,206,260 | SKIDGRIP | For: Footwear in class 25 |
| 1,275,191 | ALL STAR | For: All Purpose Sports Bags in class 18 |
| 1,276,236 | ALL STAR | For: Shirts in class 25 |
| 1,493,265 | CONS | For: Footwear in class 25 |
| 1,790,496 | CONS | For: Clothing; namely, knit T-shirts, woven shirts, knit and woven pants, sports caps and knit caps, and spandex exercise wear; namely, T-shirts, sweat pants, shorts, and tank tops in class 25 |

4

| | | |
|---|---|---|
| 1,868,363 | CONVERSE | For: Clothing; namely, knit T-shirts, collar placket shirts, woven shirts, swimwear, knit and woven shorts, knit and woven pants, tank tops, fleece tops and bottoms, wind resistant suits and jackets, sports caps and knit caps in class 25 |
| 2,453,856 | CONVERSE.COM | For: Computer services, namely, providing an interactive database of information on clothing, footwear, sporting equipment and activities, and sports personalities in class 42 |
| 2,466,322 | CONVERSE | For: Bookbags in class 18 |
| 2,683,548 | WEAPON | For: Footwear in class 25 |
| 2,807,854 | ALL STAR | For: Footwear in class 25 |
| 2,810,717 | CONVERSE | For: Socks in class 25 |
| 2,869,353 | CONVERSE | For: Eyeglasses, sunglasses, all purpose sports goggles, optical frames and accessories therefor in class 9 |
| 2,872,822 | CONVERSE | For: Sports bags in class 18 |
| 3,175,430 | CONVERSE | For: Retail store services featuring footwear, clothing, sports bags and book bags in class 35 |
| 3,191,460 | FIRST STAR | For: Footwear in class 25 |
| 3,289,613 | CONVERSE | For: Shoe laces in class 26 |
| 3,534,741 | CHUCK TAYLOR | For: Footwear; clothing, namely, t-shirts, tank tops and sweat shirts, headgear, namely, sports caps and knit caps in class 25 |
| 3,847,775 | STAR PLAYER | For: Footwear in class 25 |
| 4,417,013 | RUBBER TRACKS | For: Recording studio services; Recording studios in class 41 |
| 5,722,153 | CHUCK 70 | For: Footwear in class 25 |

| | | |
|---|---|---|
| 121,760 |  | For: Boots and shoes made of or containing rubber in class 25 |
| 315,273 |  | For: Shoes made of rubber, leather, fabric, and combinations thereof in class 25 |
| 583,097 |  | For: Rubber-soled canvas shoes for the use of men, women, and children in class 25 |
| 741,662 |  | For: Canvas-Topped, Rubber-Soled Athletic Shoes in class 25 |
| 924,169 |  | For: Basketball shoes, general purpose athletic sneakers in class 25 |
| 938,918 |  | For: Footwear-namely, rubber-soled or plastic-soled canvas shoes in class 25 |
| 1,078,480 |  | For: Footwear in class 25 |

| 1,138,468 |  | For: Footwear in class 25 |
| 1,138,469 |  | For: Footwear in class 25 |
| 1,146,876 |  | For: Footwear in class 25 |
| 1,215,935 |  | For: Shirts in class 25 |
| 1,525,779 |  | For: Socks in class 25 |
| 1,632,413 |  | For: Footwear in class 25 |
| 1,654,951 |  | For: Clothing; namely, footwear in class 25 |

7

| | | |
|---|---|---|
| 1,738,330 |  | For: All-purpose sports bags in class 18 |
| 1,789,476 |  | For: Footwear in class 25 |
| 1,804,563 |  | For: Clothing; namely, knit T-shirts, collar placket shirts, knit and woven shorts, woven pants, tank tops, fleece tops and bottoms, wind resistant suits and jackets sports caps in class 25 |
| 1,868,414 |  | For: Footwear in class 25 |
| 1,877,671 |  | For: Clothing; namely, T-shirts, shorts, tank tops, sweatsuits, vests, pants, jackets, and outerwear; namely, lined jackets in class 25 |
| 1,981,319 |  | For: Clothing; namely, T-shirts, shorts, tank tops, sweatsuits, vests, pants, jackets, sweaters, jeans and outerwear; namely, lined jackets, and nylon jackets in class 25 |

| 2,063,154 | | For: Headwear, namely, sport and knit hats and caps in class 25 |
| --- | --- | --- |
| 2,098,296 | | For: Athletic footwear, and clothing, namely, T-shirts, shorts, hats, jackets, tank tops, sweatpants and sweatshirts in class 25 |
| 2,435,788 | | For: T-shirts in class 25 |
| 2,435,789 | | For: Clothing namely, t-shirts in class 25 |
| 2,466,301 | | For: Book bags in class 18 |
| 2,856,926 | | For: Apparel, namely, warm-up suits, shirts, pants, jackets and shorts in class 25 |

| | | |
|---|---|---|
| 2,973,804 |  | For: Footwear in class 25 |
| 3,481,708 |  | For: Footwear; clothing, namely, t-shirts, short and long sleeved tops, short and long sleeved t-shirts, exercise wear, namely, sweat suits, and headgear, namely, sports caps in class 25 |
| 1,053,338 |  | For: Canvas and imitation leather topped soft soled athletic shoes and casual shoes in class 25 |
| 1,490,262 |  | For: Athletic footwear in class 25 |
| 1,588,960 |  | For: Athletic footwear in class 25 |
| 1,658,256 |  | For: Footwear in class 25 |

| | | |
|---|---|---|
| 1,998,884 |  | For: Footwear in class 25 |
| 3,258,103 |  | For: Footwear in class 25 |
| 4,062,112 |  | For: Athletic footwear in class 25 |
| 4,065,482 |  | For: Athletic footwear in class 25 |
| 4,398,753 |  | For: Footwear in class 25 |

10. The above U.S. registrations for the Converse Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Converse Trademarks constitute *prima facie* evidence of their validity and of Converse's exclusive right to use the Converse Trademarks pursuant to 15 U.S.C. § 1057 (b). True and correct copies of the United States Registration Certificates for the above-listed Converse Trademarks are attached hereto as **Exhibit 1**.

11. Converse has built substantial goodwill in the Converse Trademarks. As a result, the Converse Trademarks are famous marks as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product design of the Converse Products have enabled the Converse brand to achieve widespread recognition and fame and have made the Converse Trademarks some of the most well-known marks in the athletic apparel and footwear industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Converse brand have made the Converse Trademarks invaluable assets.

12. Converse has continuously used the Converse Trademarks in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Converse Products since their respective dates of first use as noted on the federal trademark registration certificates.

13. Among the purchasing public, genuine Converse Products are instantly recognizable as such. The Converse Trademarks identify, in the United States and throughout the world, high quality products designed and manufactured by Converse.

14. Genuine Converse Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois and the converse.com website.

15.     Sales of Converse Products via the converse.com website are significant.   The converse.com website features proprietary content, images and designs exclusive to the Converse brand.

16.     Due to Converse's longstanding use of the Converse Trademarks, extensive sales, and significant advertising and promotional activities, the Converse Trademarks have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States.

17.     The Converse Trademarks are exclusive to Converse and appear clearly on Converse Products, as well as on the packaging and advertisements related to such products. Converse has expended substantial resources in developing, advertising, and otherwise promoting and protecting the Converse Trademarks.  As a result, products bearing the Converse Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Converse.  Converse Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high quality and innovative designs.  Because of these and other factors, the Converse name and the Converse Trademarks are famous throughout the United States.

18.     Converse Products branded under the Converse Trademarks have been widely accepted by the public and are enormously popular.  The widespread fame, outstanding reputation, and significant goodwill associated with the Converse brand have made the Converse Trademarks invaluable assets.

**The Defendants**

19.     On information and belief, Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-

commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Converse, but which may become the subject of this action through amendment of this Complaint.

20.     Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Converse to learn Defendants' true identities and the exact interworking of their counterfeit network at this time.  If Defendants provide additional credible information regarding their identities, Converse will take appropriate steps to amend this Complaint.

21.     On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with weak trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

## IV.  DEFENDANTS' UNLAWFUL CONDUCT

22.     The success of the Converse brand has resulted in significant counterfeiting of Converse's trademarks.  In recent years, Converse has identified many fully interactive, e-commerce stores offering counterfeit Converse Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, and DHgate, including the e-commerce stores operating under the Seller Aliases.  The e-commerce stores operating under the Seller Aliases are offering for sale and/or selling Counterfeit Converse Products to consumers in this Judicial District and throughout the United States.  E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States.  **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report.   Over 90% of all CBP

14

intellectual property seizures were smaller international mail and express shipments, and over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

23. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

24. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the

U.S., including Illinois, accept payment in U.S. dollars and have sold Counterfeit Converse Products to residents of Illinois.

25.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Converse has not licensed or authorized Defendants to use any of the Converse Trademarks, and none of the Defendants are authorized retailers of genuine Converse Products.

26.     Many Defendants also deceive unknowing consumers by using the Converse Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings to drive traffic away from Converse authorized channels, and instead to their own infringing sites.  Other e-commerce stores operating under Seller Aliases omit using Converse Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Converse Products.

27.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to online marketplace platforms to prevent discovery of their true identities and the scope of their counterfeiting operations.

28.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Converse Products.  Such seller

alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operations, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Counterfeit Converse Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that many of the Counterfeit Converse Products may be manufactured by and come from a common source and that many of Defendants are interrelated.

30.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

31.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Converse's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court in an attempt to avoid payment of any monetary judgment awarded by the Court.  Indeed, analysis

of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

32.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Converse Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Converse, have jointly and severally, knowingly and willfully used and continue to use the Converse Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Converse Products into the United States and Illinois over the Internet.

33.     Defendants' unauthorized use of the Converse Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Converse Products, including the sale of Counterfeit Converse Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Converse.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

34.     Converse hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Converse Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Converse Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Converse Products offered, sold or marketed under the Converse Trademarks.

18

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Converse Trademarks without Converse's permission.

37.     Converse is the owner of the Converse Trademarks.  Converse's United States Registrations for the Converse Trademarks (Exhibit 1) are in full force and effect.  On information and belief, Defendants have knowledge of Converse's rights in the Converse Trademarks and are willfully infringing and intentionally using counterfeits of the Converse Trademarks.  Defendants' willful, intentional and unauthorized use of the Converse Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Converse Products among the general public.

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     Converse has no adequate remedy at law, and if Defendants' actions are not enjoined, Converse will continue to suffer irreparable harm to its reputation and the goodwill of the Converse Trademarks.

40.     The injuries and damages sustained by Converse have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Converse Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41.     Converse hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Converse Products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with Converse or the origin, sponsorship, or approval by Converse of Defendants' Counterfeit Converse Products.

43. By using the Converse Trademarks in connection with the sale of Counterfeit Converse Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Converse Products.

44. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Converse Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45. Converse has no adequate remedy at law and, if Defendants' actions are not enjoined, Converse will continue to suffer irreparable harm to its reputation and the associated goodwill of the Converse Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Converse prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Converse Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Converse Product or is not authorized by Converse to be sold in connection with the Converse Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Converse Product or any other product produced by Converse that is not Converse's or

not produced under the authorization, control, or supervision of Converse and approved by Converse for sale under the Converse Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Converse Products are those sold under the authorization, control, or supervision of Converse, or are sponsored by, approved by, or otherwise connected with Converse;

d.  further infringing the Converse Trademarks and damaging Converse's goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Converse, nor authorized by Converse to be sold or offered for sale, and which bear any of Converse's trademarks, including the Converse Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2)  Entry of an Order that, upon Converse's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Converse Trademarks;

3)  That Defendants account for and pay to Converse all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Converse Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Converse be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Converse Trademarks;

5) That Converse be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 26th day of October 2021.       Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law
jchristensen@gbc.law

*Counsel for Plaintiff Converse Inc.*